```
     IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ESTATE OF VIRGINIA CAMPANA,**
**Deceased by Michael Donovan and**
**Consuela Campana, its Co-Executors,**

    **Plaintiff,**

**v.**     //   **CIVIL ACTION NO. 1:10CV194**
                                        **(Judge Keeley)**

**COMERICA BANK & TRUST, N.A.,**
**UBS FINANCIAL SERVICES, and**
**EDWARD BROWN, individually and**
**as an employee of UBS**
**FINANCIAL SERVICES,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion to compel arbitration filed by the defendants, UBS Financial Services and Edward Brown (collectively "UBS"). For the reasons that follow, the Court **GRANTS** the defendants' motion (dkt. no. 48).

### I.

The Estate of Virginia Campana, Deceased, Michael Donovan and Consuela Campana, its Co-Executors ("the plaintiff"), alleges that the defendants, Comerica Bank and Trust, N.A. ("Comerica"), as trustee, and UBS, as trust asset manager, improperly managed and executed a trust intended to benefit Virginia Campana during her lifetime. The facts germane to the instant dispute, however, relate only to several written agreements with UBS and, more specifically, mandatory arbitration clauses within those agreements.

**ESTATE OF VIRGINIA CAMPANA v.**                                                 **1:10CV194**
**COMERICA BANK AND TRUST, et al**

## MEMORANDUM OPINION AND ORDER

On November 13, 2003, Virginia Campana's sister, Mary Lou Campana, created a revocable trust (the "FBO Trust") and, by her will, funded it for the benefit of Virginia. Mary Lou Campana served as trustee of the FBO Trust until her death, when Comerica assumed trustee responsibilities. Throughout the duration of the trust, both Mary Lou Campana and, after her death, Comerica, retained UBS to provide investment services to the FBO Trust pursuant to three written agreements (the "FBO Trust agreements").[1] In addition to these agreements, Virginia Campana also contracted directly with UBS on February 26, 2004 for investment services unrelated to the FBO Trust (the "February 26, 2004 agreement").[2]

Each of these four agreements contains an identical arbitration clause that provides:

> Client agrees, and by carrying an account for Client, UBS Financial Services agrees that, any and all controversies which may arise between UBS Financial Services, any of UBS Financial Services' employees or agents and Client concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or any other agreement, whether entered

---

[1] Specifically, UBS entered three contracts with the FBO Trust trustee: a November 13, 2003 agreement signed by Mary Lou Campana, a November 26, 2004 agreement signed by Mary Lou Campana, and a May 23, 2005 agreement signed by a Comerica representative.

[2] Virginia Campana retained UBS for investment services regarding a personal trust account unrelated to the FBO Trust.

> into prior, on or subsequent to the date hereof, shall be determined by arbitration.
>
> This Agreement shall be binding upon Client and Client's personal representatives, heirs, estate, executors, administrators, committee and/or conservators, successors and assigns, and shall inure to the benefit of UBS Financial Services and its successors and assigns and each subsequent holder of this Agreement.

UBS argues that this clause binds Virginia Campana and her estate to resolve this case through arbitration, rather than in this Court. Furthermore, it asserts that the plaintiff is bound by the clause as it appears both in the three FBO Trust agreements and in Virginia Campana's February 26, 2004 agreement.

On October 14, 2011, during a hearing on UBS's motion, the plaintiff for the first time disputed the authenticity of Virginia Campana's signature on the February 26, 2004 agreement. UBS moved to preclude evidence contradicting the plaintiff's prior statement regarding the authenticity of Virginia Campana's signature or, in the alternative, to enter a case management order for consideration of the same (dkt. no. 64). After noting that the plaintiff's late challenge prejudiced UBS, which had the right to reasonably rely on the plaintiff's earlier concession regarding the authenticity of Campana's signature, the Court **DENIED IN PART** UBS's motion to preclude evidence, **GRANTED IN PART** UBS's motion for a case management order, and granted the parties leave to conduct

discovery as to the signature's authenticity. On October 18, 2011, the plaintiff filed two expert reports that concluded the signature on the February 26, 2004 agreement was a forgery. On December 8, 2011, UBS filed its own expert report refuting the plaintiff's forgery claim.

For the reasons that follow, the Court concludes that it need not determine the authenticity of the signature on the February 26, 2004 agreement because the plaintiffs are bound by the arbitration clauses in the three FBO Trust agreements of which Virginia Campana was a beneficiary, and there is no dispute as to the validity of those agreements.

## II.

The Federal Arbitration Act ("FAA") governs the enforcement of contractual arbitration clauses, and the Fourth Circuit has adopted "a liberal policy favoring arbitration agreements." 9 U.S.C. §§ 2-4 (2006); Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). Importantly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself are resolved in favor of arbitration." Id. Accordingly, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration

**ESTATE OF VIRGINIA CAMPANA v.**  　　　　　　　　　　　　　　　　**1:10CV194**
**COMERICA BANK AND TRUST, et al**

**MEMORANDUM OPINION AND ORDER**

agreement exists and the issues in the case fall within its purview." Id.

To compel an opposing party to resolve its dispute through arbitration, a litigant must demonstrate:

> (1) the existence of a dispute between the parties,
> (2) a written agreement that includes an arbitration provision which purports to cover the dispute,
> (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and
> (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Id. Once a litigant has met this burden and the court sends his case to arbitration, "[t]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" Id. (quoting 9 U.S.C. § 3). "This stay-of-litigation is mandatory." Id.

Here, the plaintiff concedes that UBS has met requirements (1), (3), and (4) and argues only that the second requirement, the existence of an arbitration provision that covers this dispute, is lacking.

**A.**

Although the FAA and case law clearly favor the liberal enforcement of arbitration clauses, the plaintiff asserts that,

because Virginia Campana herself did not sign any of the FBO Trust agreements, her estate cannot be bound to arbitrate a dispute related to those agreements. As support, the plaintiff points to a single statement by the Supreme Court of the United States that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).

The plaintiff's reliance on Howsam is misplaced. In that case, the Court was not deciding whether a case should go to arbitration, but whether an arbitrator or a judge should decide that threshold "question of arbitrability." Id. Thus, Howsam does not address the applicability of an arbitration clause to a beneficiary who did not personally sign the agreement, but actually reinforces the policy favoring enforcement of arbitration provisions.

**B.**

The plaintiff further argues that, because the arbitration clauses in dispute do not expressly bind third-party beneficiaries, the Court should not construe them to require resolution of the plaintiff's claims through arbitration. The FAA and case law clearly favor a broad interpretation of an arbitration clause, however, and "ambiguities as to the scope of the arbitration clause

itself [should be] resolved in favor of arbitration." Adkins, 303 F.3d at 500. Furthermore, the Fourth Circuit has broadly interpreted arbitration provisions similar to those in the FBO Trust agreements, holding that "the reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope." Drews Dist., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 350 (4th Cir. 2001). In Drews Distributing, an arbitration clause covered "any controversy or claim arising out of or related to this Agreement." Id. at 349. The Fourth Circuit interpreted this clause liberally, holding that an earlier agreement that merely contemplated this later agreement containing the arbitration clause was sufficiently related to fall within the arbitration clause. Id. at 350.

Applying the Fourth Circuit's reasoning to the instant dispute requires that this case be sent to arbitration. Here, the arbitration clauses in the FBO Trust agreements mandate that "any and all controversies . . . shall be determined by arbitration." Further, each agreement is binding upon "Client and Client's personal representatives, heirs, estate, executors, administrators, committee and/or conservators, successors and assigns." (Dkt. Nos. 49-1 at 23, 24; 49-2 at 23, 24; 49-3 at 10, 12).

**MEMORANDUM OPINION AND ORDER**

The plaintiff asserts that Virginia Campana, as a beneficiary of the FBO Trust agreements, is not expressly included in this list, and therefore, the plaintiff's dispute with UBS lies beyond the reach of the arbitration clauses, even though its claims relate directly to UBS's performance of the contracts in which these clauses appear. The FAA and Fourth Circuit precedent, however, direct this Court to conclude otherwise. The plaintiff's dispute with UBS over its management and execution of the FBO Trust agreements clearly falls within the broad "any and all controversies" language of the arbitration clauses. Furthermore, to the extent that the application of these clauses to trust beneficiaries is ambiguous, "ambiguities as to the scope of the arbitration clause itself are resolved in favor of arbitration." See Adkins, 303 F.3d at 500. Therefore, as the court broadly construed the arbitration clause in Drews Distributing, this Court concludes that the plaintiff's claims against UBS fall within the broad "any and all controversies" language of the arbitration clauses in the FBO Trust agreements. See 245 F.3d at 350.

**III.**

Accordingly, because it finds that valid arbitration clauses exist and this dispute falls within the purview of those clauses, the Court:

**ESTATE OF VIRGINIA CAMPANA v.**  1:10CV194
**COMERICA BANK AND TRUST, et al**

**MEMORANDUM OPINION AND ORDER**

1) **DENIES IN PART** the defendant's motion to preclude evidence contradicting the plaintiff's statement regarding authenticity of Virginia Campana's signature and **GRANTS IN PART** the motion to enter a case management order (dkt. no. 64);

2) **GRANTS** the defendant's motion to compel arbitration (dkt. no. 48);

3) **STAYS** the case as it pertains to the defendants, UBS Financial Services and Edward Brown, pending resolution of arbitration proceedings; and

4) **RETAINS** jurisdiction of UBS's pending petition for costs and attorney's fees (dkt. no. 89).

The Court will address both UBS's petition and the case schedule as it pertains to the plaintiff and Comerica at the status conference scheduled for Thursday, January 5, 2012 at 1:30 P.M.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: January 4, 2012

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE